**John NICHOLAS, Trustee of World Wide Liquor Co., Inc., a Bankrupt, Appellant,**

v.

**Maurice C. COHN, as Trustee, Appellee.**

**No. 16888.**

United States Court of Appeals
Fifth Circuit.

May 15, 1958.

Irving M. Wolff, Miami, Fla., for appellant.

Hylan H. Kout, Miami Beach, Fla., for appellee.

Before HUTCHESON, Chief Judge and TUTTLE and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

■ This case presents for our determination the sole question of whether the Court below properly reversed the summary issue of a turnover order by a Referee in Bankruptcy directed to Maurice C. Cohn as "trustee and guardian of the estate of [his two minor daughters]," and holding that the matter required a plenary suit. Cohn was also president of World Wide Liquor Co., Inc., the Bankrupt.

In October 1949 Cohn was appointed legal guardian of the estate of his two minor daughters by the Probate Court of Dade County, Florida. This entire estate comprised $2,748.04 which Cohn deposited as guardian in a savings account in the First National Bank of Miami. During July and August of 1956, Cohn completed two transactions which are the roots of this appeal.

On July 2, 1956, Cohn, without the authority or consent of the Probate Court, withdrew $1,800 from the guardianship account and delivered it to World Wide, of which he was president, in exchange for a check drawn on World Wide in like amount and of even date. This check was not deposited to the guardianship account until July 20. Cohn admitted that it was not good at the time it was drawn. On July 31, a similar transaction [1] took place. This time World Wide received $2,800 from the guardianship account but the exchange check to Cohn's daughters was dated August 8, 1956 and was not deposited to that account by Cohn until August 16.

On September 7, 1956, World Wide, by its president, Cohn, filed its voluntary petition in bankruptcy. That same day an adjudication of bankruptcy and order of general reference was entered.

In the course of the administration of the bankrupt estate, the Trustee in bankruptcy filed before the Referee a petition for order to show cause why Cohn, as guardian of the estate [2] of his minor daughters, should not be required to turn over to the Trustee $5,000 alleging that the described dealings of Cohn as guardian and president of the bankrupt were transfers which constituted preferential payments. Cohn, describing himself as "Court appointed" and "legal guardian," moved to quash the order to show cause, issued by the Referee December 11, 1956, on the ground that the funds in question were not within the jurisdiction of the Bankruptcy Court. This was so, he contended, because they were part of the estate of his daughters and still within the power of the Probate Court.

Cohn then refused to plead further for fear of admitting the jurisdiction of the Bankruptcy Court. After a hearing the Referee entered a turnover order on March 8, 1957, requiring that Cohn "As guardian of the trust estate of" the minor daughters turn over the $4,600 to the Trustee and restraining Cohn "As trustee and guardian of the estate" of the minors from any withdrawals from the guardianship account.

On Cohn's Petition for Review of action taken by the Referee in this summary proceeding, the District Court reversed the Referee's order of March 8 and held that since the funds involved were not in the actual or constructive possession of the Bankrupt, and the adverse claim to the funds asserted by Cohn's wards was substantial and not merely colorable, the parties were entitl-

---

1. The July 2 transaction in fact involved a $1,950 withdrawal and deposit to the guardianship account and the July 31 transaction $3,200. It is undisputed that certain personal dealings of Cohn were part of each transaction so that the amounts flowing from the guardianship account to World Wide and back again were those discussed, i. e., $1,800 and $2,-800 respectively.

2. The Trustee's Petition referred to Cohn in various ways as "father and natural guardian" of the daughters, President of bankrupt, etc., but the prayer referred to him only as "said * * * Cohn." The Order to show cause and restraining withdrawals from the guardianship bank account also described him as "The said * * * Cohn as Father and natural guardian." Neither the Petition nor Order described him as "legal guardian."

ed to a determination of their claim in a plenary suit. The Trustee in Bankruptcy appeals from this judgment on this narrowly circumscribed issue.

It is not contended that the funds in question were within the possession [3] of the Bankrupt at the time of bankruptcy so that if summary jurisdiction is proper, it must be based either upon the consent of the adverse claimant or upon the fact that the claim asserted is not substantial but rather merely colorable. B. F. Avery & Sons Co. v. Davis, 5 Cir., 192 F.2d 255; Maule Industries, Inc., v. Gerstel, 5 Cir., 232 F.2d 294, 297.

■ It is urged by the Trustee that consent to summary jurisdiction is manifest in the filing by Cohn in his individual capacity of certain claims against World Wide in the bankruptcy proceedings without timely objection. Recognizing that this Court has previously ruled to the contrary on this very question in B. F. Avery & Sons Co. v. Davis, supra, the Trustee insists that the 1952 Amendment to § 2(a) (7), 11 U.S.C.A. § 11(a) (7), might compel a different result. Where, as was the case here, categorical objection to jurisdiction was made at the very outset, the 1952 Amendment does not affect Avery.

The Trustee nonetheless asserts that summary jurisdiction was proper without consent since possession of the funds were merely colorable. This argument seems to be that since Cohn had so many roles his knowledge, as president, of the bankrupt's insolvency and his knowledge, as guardian, that the funds came from an insolvent payor made the transaction a voidable preference. But the fact that these transactions may amount to a transfer which constitutes a preference does not automatically bestow summary jurisdiction upon the Bankruptcy Court. Such claim or title may be fraudulent and voidable and yet be real and substantial. Chandler v. Perry, 5 Cir., 74 F.2d 371; Autin v. Piske, 5 Cir., 24 F.2d 626; Collier on Bankruptcy, 14th Ed., Vol. 2, § 23.06[9], p. 502.

■ If, as we hold, a voidable preference is insufficient, the assertion of colorable claim fares no better on the intrinsic merits. While the Trustee, on oral argument, strenuously insisted that the objective was not summarily to take from these minor wards money belonging to them, and the Referee[4] had earlier recognized that he could do no such thing, the fact is that the order was for Cohn "as guardian of the trust estate" of the wards to turn over the $4,600 deposited in the guardianship account by him. A proceeding seeking, and obtaining, such relief poses substantial questions under the general as well as Florida law of fiduciaries[5] and the further question

---

3. That Cohn served as both president of the Bankrupt and guardian of the estate of his daughters, which might give rise to a consequent actual or imputed knowledge of the affairs of each, does not alter the fact that the funds were not in the possession of the corporation, World Wide, at the date of bankruptcy.

4. "The Court: I will overrule the motion without prejudice to the same being renewed at the conclusion of the hearing. The Court concedes that if the assets in the registry belong to the two minor children, then this Court would have no jurisdiction over the funds, but that jurisdiction would be in the County Judge's Court of Dade County, Florida."

5. Cohn, as guardian, asserting that under Florida law title to property of the ward remains in the ward without vesting in the guardian cites Baird v. Steadman, 39 Fla. 40, 21 So. 572; Osborne v. Van Horn, 2 Fla. 360; McKinnon v. First National Bank, 77 Fla. 777, 82 So. 748, 6 A.L.R. 111. He urges also that under familiar general principles, Am.Jur. Vol. 25, Guardian and Ward, §§ 212, 213, the ward may reclaim property from third persons who were charged with knowledge of the fiduciary's unauthorized or wrongful disposition.

It is difficult to follow the Trustee's reasoning for while he agreed generally on this, by his reliance on § 98, Am.Jur., Vol. 25, Guardian and Ward, and Florida cases which are claimed to follow it, that recovery on contracts made by the guardian for the estate are enforceable only against the guardian, not the ward, he apparently asserts that if the order were issued, it would only compel Cohn to disgorge his own funds, not that of the wards. The order did not so provide.

whether voluntary restoration by an earlier recipient of funds misapplied by a fiduciary amounts to a "payment" or constitutes a bankruptcy voidable preference.[6]

What the answers to these as well as to the many other intriguing questions may be is neither necessary nor appropriate for us to indicate. We need only say that the problems are substantial and genuine. How or in what manner they may be disposed of by a Court in a plenary suit is not of any present concern. We determine only that the estate of these wards as a good faith adverse claimant is entitled to a traditional adjudication in a plenary, not summary, proceeding.

That is all the District Court held. Its action was right.

Affirmed.

---

6. Cohn, guardian, cites Cook v. Tullis, 18 Wall. 332, 85 U.S. 332, 21 L.Ed. 933; Montgomery v. Bucyrus Mach. Works, 92 U.S. 257, 23 L.Ed. 656; Ellet-Kendall Shoe Co. v. Martin, 8 Cir., 222 F. 851; Illinois Parlor Frame Co. v. Goldman, 7 Cir., 257 F. 300; Fisher v. Shreve, C. & L. Co., D.C., 7 F.2d 159; Hough v. Atchison, T. & S. F. R. Co., 10 Cir., 34 F.2d 238; Ullman v. N. Sobel, Inc., D.C., 47 F.2d 612.